UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | Bankruptcy Case |
| ) | No. 10-61929-aer7 |
| ALAN DEE McMILLIN and ) | |
| DEBORAH DARLENE McMILLIN, ) | MEMORANDUM OPINION |
| ) | |
| Debtors. ) | |

The debtors have claimed miscellaneous parts to a 1926 Ford Model A automobile exempt to a value of $3,000 under Oregon's vehicle exemption. This matter comes before the court on the Trustee's objection to this exemption claim. The parties have submitted the matter on stipulated facts and submitted their briefs. The court heard oral argument on July 15, 2010 where the matter was taken under advisement.

Facts:

Over several years Debtor Alan McMillin and his father accumulated vehicle parts from various sources intending to reconstruct a working 1926 Ford Model A automobile. Debtors filed their Chapter 7

MEMORANDUM OPINION-1

petition herein on April 10, 2010.  As of the petition,[1] all parts
necessary for reconstructing the Model A had been gathered.  None,
however, were assembled.  These parts, including wheels, were
significantly more than necessary to complete one Model A, although only
one body and one motor were collected.  Alan McMillin's father is now
deceased and Debtors do not intend to reconstruct the Model A.

Issue/Question Presented:

Does a group of parts collected from various sources which have
never been assembled but would, if assembled, comprise a working
automobile, constitute a "vehicle" for purposes of Oregon's exemption
statute?

Discussion:

The applicable statute is O.R.S. 18.345(1)(d),[2] which provides as
follows:

> (1) All property, including franchises, or rights or
> interest therein, of the judgment debtor, shall be liable
> to an execution, except as provided in this section and in
> other statutes granting exemptions from execution.  The
> following property, or rights or interest therein of the
> judgment debtor, except as provided in ORS 18.305, shall
> be exempt from execution:
>
> > (d) A vehicle to the value of $3,000.  As used
> > in this paragraph "vehicle" includes an
> > automobile, truck, trailer, truck and trailer or
> > other motor vehicle.[3]

---

[1] With limited exceptions not relevant here, exemption rights are
determined as of the time of petition.  In re Lane, 364 B.R. 760, 762-763
(Bankr. D. Or. 2007).

[2] As permitted by 11 U.S.C. § 522(b)(2), Oregon has "opted out" of the
federal exemption scheme.  ORS 18.300.

[3] Oregon's "vehicle" exemption dates back almost to statehood.  It was
(continued...)

MEMORANDUM OPINION-2

Debtors argue that the statute is not limited to vehicles which operate or those for which a specific purpose or use is intended. Assuming *arguendo* Debtors are correct, nevertheless the property claimed exempt must still otherwise be a "vehicle." The trustee argues that "This is really in the nature of a vehicle parts inventory which may only be claimed exempt under O.R.S. 18.345(1)(o)."[4] Trustee's Memorandum in Support of Objection to Exemption at 2:22-23. This appears to be a matter of first impression in this district.

In interpreting an Oregon statute, the court's job is to determine the legislature's intent. State v. Gaines, 346 Or. 160, 165, 206 P.3d 1042, 1047 (2009). In so doing, the court is to first look to the statute's text and context. Id. at 171, 206 P.3d at 1050.[5] Here,

---

[3](...continued)
originally enacted in 1862 as part of what is commonly referred to as the "tools of the trade" exemption. It exempted a vehicle necessary to carry on the debtor's trade or profession up to $400. Civ. Code Or. § 279(3) (1862). The statute did not, however, define or illustrate the term "vehicle." In 1862 one imagines vehicles consisted mainly of wagons, buggies, coaches, carriages etc. With the advent and popularity of motorized travel, the legislature added in 1933, the following clause: "The word 'vehicle' shall be construed to include a motor vehicle, automobile, truck and/or trailer, as the case may be." Sec. 3-207(3), Oregon Code 1933 (Or. Laws 1933, ch. 383, § 1). In 1953 the "include" clause was amended to substantially its present form yet it remained part of the tools of the trade exemption. O.R.S. 23.160(1)(c)(1953). In 1965 the legislature partially liberated the vehicle exemption by giving it stand-alone status in the amount of $400, but limiting it and the tools of the trade exemption (then $800) to an aggregate $800. O.R.S. 23.160(1)(d)(1965) (Or. Laws 1965, ch. 577, § 1). In 1981, the legislature finally untethered vehicles from tools of the trade by dropping the aggregate dollar limitation. Or. Laws 1981, ch. 903, § 2. In 2003, the statute was renumbered to its present form. Over the years the exemption amount has increased periodically to its present $3,000.

[4] The so-called wild card or pour-over exemption.

[5] The court also has discretion to examine any legislative history proffered by the parties and give it whatever weight it deems appropriate.
(continued...)

MEMORANDUM OPINION-3

the statute makes it clear that a "vehicle" includes an "automobile." It does not, however, define those terms. The Trustee urges the court to look to the Oregon Vehicle Code, O.R.S. 801.100 et. seq., for the pertinent definitions.[6] It has been held, however, that those definitions do not govern construction of Oregon's vehicle exemption. <u>In re Dormer</u>, Case # 685-09150 (Bankr. D. Or. April 30, 1986) (Wilhardt, J.) (unpublished). In <u>Dormer</u> the court construed the current statute's predecessor, O.R.S. 23.160(1)(d), which contained identical pertinent language. The court held that the "legislature intended to include in this subsection a machine which is built and used for the purpose of carrying people or products on the ground from point A to point B." <u>Id</u>. at 2.[7] <u>Dormer</u> did not address the question of whether never-assembled parts constitute a "vehicle." Thus it is not directly on point.

In its search for legislative intent, the court may ordinarily presume the legislature intended words of common usage to have their plain, natural and ordinary meaning. <u>PGE v. Bureau of Labor and Industries</u>, 317 Or. 606, 611, 859 P.2d 1143, 1146 (1993), <u>superseded on other grounds by statute as stated in</u>, <u>State v. Gaines</u>, 346 Or. 160, 171-172, 206 P.3d 1042, 1050-1051 (2009).

---

[5](...continued)
<u>Gaines</u>, <u>supra</u> at 171-172, 206 P.3d at 1050-1051. Here, the parties have not proffered any legislative history.

[6] <u>See</u>, O.R.S. 801.590 (defining "Vehicle"); O.R.S. 801.360 (defining "Motor vehicle').

[7] In <u>Dormer</u>, a tractor did not meet the court's definition.

MEMORANDUM OPINION-4

> In interpreting a statute enacted many years ago, the court is to seek to discern the intent of the legislature that passed [the] statute. Dictionaries in use at the time of the enactment may be particularly useful in that inquiry.

State v. Leslie, 204 Or. App. 715, 719, 132 P.3d 37, 39 (2006) (internal quotation and citation omitted). From the exemption statute's enactment in 1862, to the addition of "automobile" as illustrative in 1933, to the present, a "vehicle" has basically been defined as something that carries goods or passengers.[8] Likewise, from 1933 to the present an "automobile" has basically been defined as a self-propelled vehicle.[9] These definitions would seem to presume at least partial assembly so as to be able to carry or transport. Mere parts would not seem to qualify.

Debtors, however, rely on In re Bailey, 326 B.R. 750 (S.D. Iowa 2004) as persuasive authority. There, a 1932 Ford Coupe and 1938 Ford Sedan had been assembled at some point, registered and titled, but as of the bankruptcy petition date were in an inoperable partially disassembled

---

[8] For definitions of "vehicle" in that time-span, see, A New Dictionary of the English Language, Vol. II. 2005 (1838) ("[a] carriage, a conveyance; the means, instrument of carriage or conveyance . . ."); A College Standard Dictionary of the English Language 1237 (1931) ("[t]hat in or on which anything is carried; especially, a contrivance fitted with wheels or runners for carrying something; a conveyance, as a car or sled"); Webster's Third New Int'l Dictionary 2538 (unabridged ed. 2002) ("a means of carrying or transporting something: . . . a carrier of goods or passengers . . . ;a container in which something is conveyed . . . ;a piece of mechanized equipment . . . ").

[9] For definitions of "automobile" in that time-span see, Webster's Collegiate Dictionary 73 (3d ed. 1923) ("[a]n automobile vehicle or mechanism; esp., a self-propelled vehicle suitable for general use on a street or roadway"); A College Standard Dictionary of the English Language 90 (1931) ("[a] self-propelling vehicle; horseless carriage"); Webster's Third New Int'l Dictionary 148 (unabridged ed. 2002) ("a usu. 4-wheeled automotive vehicle designed for passenger transportation on streets and roadways and commonly propelled by an internal-combustion engine using a volatile fuel (as gasoline) . . . ").

MEMORANDUM OPINION-5

state to repair (32 Ford Coupe) and repaint, restyle and re-engineer (38 Ford Sedan).  If reassembled there were enough parts to render both vehicles operational.  The Iowa exemption statutes allowed each debtor to exempt "one motor vehicle" up to a value of $5,000.  The court looked at the definitions of "vehicle" and "motor vehicle" in the Iowa Motor Vehicle Code.  Although it found both vehicles fit the definitions, it nonetheless did not adopt those definitions for exemption purposes.  Instead, the court looked to the common or dictionary definition, however, it did not equate the definition that a motor vehicle be self-propelled with being "currently operable" reasoning this could lead to absurd results, such as denying an exemption to a car merely because it had a flat tire or had its battery removed as of the petition date.  Id. at 757.  In allowing the exemption, the court concluded, that for purposes of the exemption statute, the term "motor vehicle" included an inoperable vehicle that could be made operable by reassembling or repairing one or more of its parts.  Id.

While Bailey has similarities to this case, it also has crucial distinctions.  There, the vehicles had originally been assembled and, at filing, were partially, if not mostly, assembled.[10]  Here, the Model A has never been assembled.  As such, it has never existed as an "automobile."  It was not on the petition date, nor has it ever been, a "machine," Dormer, or a self-propelled carrier of goods or passengers.  To the extent Bailey's holding can be read as including a never-assembled

---

[10] The hood, valve covers, air cleaner, front brake calipers, rotors and front wheels were off the 32 Ford Coupe. Bailey, supra at 755. It is unclear how many parts were off the 38 Ford Sedan, the court citing an investigator's report that "[t]he car will need to be painted and reupholstered." Id. at 756.

collection of automotive parts in the definition of "motor vehicle" for purposes of Iowa's exemption, this court concludes the Oregon legislature did not intend such generosity. In reaching this conclusion, this court is keenly aware that Oregon's exemption statutes are to be liberally construed, In re Stratton, 269 B.R. 716, 718 (Bankr. D. Or. 2001); Childers v. Brown, 81 Or. 1, 5, 158 P.166, 168 (1916), but a liberal construction cannot transform a pile of parts into an automobile. The Trustee's objection will be sustained. A separate order will be entered.

The above constitute my findings of fact and conclusions of law pursuant to FRBP 7052. They shall not be separately stated.

ALBERT E. RADCLIFFE
Bankruptcy Judge

MEMORANDUM OPINION-7